George **BRIDGES** et al.,
Plaintiffs,

v.

The **CITY OF NORTH CHICAGO**, a Municipal Corporation and Board of North Chicago Fire and Police Commissioners, Defendants.

No. 74 C 2488.

United States District Court,
N. D. Illinois, E. D.

April 30, 1975.

Judson H. Miner, Chicago, Ill., for plaintiffs.

Michael B. Nash, Chicago, Ill., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

PERRY, District Judge.

This action was brought by two Negro residents of the City of North Chicago, Illinois, who had sought employment as police officers on the North Chicago Police Department. Plaintiffs alleged that the failure of the City of North Chicago to hire them was in violation of the 1866 Civil Rights Act, 42 U.S.C. Section 1981 and Title VII of the 1964 Civil Rights Act, 42 U.S.C. Sections 2000e *et seq.* By Order of this Court dated April 9, 1975, Plaintiffs were granted leave to add KEVIN REID, DEWAYNE WOMACK, DAVID ROCKINGHAM, ROOSEVELT PITTS and BRODERICK MILLER as named Plaintiffs and to withdraw their class allegations.

On the basis of the stipulation of facts presented by the parties, I hereby make the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Plaintiffs, BRIDGES, CLARK, REID, WOMACK, ROCKINGHAM, PITTS and MILLER, are Negroes, who have applied for positions as police officers on the North Chicago Police Department.

2. The Defendants are the CITY OF NORTH CHICAGO and THE NORTH CHICAGO BOARD OF FIRE AND POLICE COMMISSIONERS.

3. Responsibility for recruiting and hiring applicants for the North Chicago Police Department is vested in the Defendant, NORTH CHICAGO BOARD OF FIRE AND POLICE COMMISSIONERS.

4. All appointments to the North Chicago, Illinois Police Department are made by North Chicago Board of Fire and Police Commissioners pursuant to Chapter 24, Ill.Rev.Stat. Sections 10–2.-1–1 *et seq.* The specific procedure followed was:

(a) Filing of a completed application;

(b) An agility test;

(c) Written psychological examination;

(d) Oral psychological examination;

(e) Interview with the Board of Fire and Police Commissioners;

(f) Medical examination; and

(g) Notification and posting of eligibility list.

5. There were no formal and/or written standards to be followed in evaluating applicants. Thus, although there were set procedures to be followed, the standards used were necessarily vague and subjective.

6. The North Chicago, Illinois Police Department employs twenty-five (25) police officers, twenty-three (23) of whom are white and two (2) of whom are black.

7. Since the racial composition of the available labor force is approximately even between black and white, the effect of these standards has been to disqualify a disproportionate number of minority applicants.

8. This disparity in minority representation on North Chicago's Police Department has resulted despite the absence of any intention by any of the defendants to discriminate against any individuals or minorities.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over this action and the parties thereto pursuant to Sections 706(f) of Title VII, 42 U.S.C. Sections 2000e–5(f) and 28 U.S.C. Sections 1331 and 1343.

■ 2. The Court finds there was no intention to discriminate, however, the statistical disparity between the racial composition of the North Chicago Police Department and the racial composition of the available labor force of the Community of North Chicago makes out a *prima facie* case of a violation of Title VII and Section 1981. *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 28 L.Ed.2d 158 (1970); *United States v. City of Chicago*, 385 F.Supp. 543 (N.D.Ill.1974).

■ 3. While there is evidence that Defendants' hiring practices have had a disproportional impact on minority applicants, there is no evidence that these procedures had ever been determined to be a valid predictor of the abilities of applicants to Defendants' police force or that they were necessary. *Griggs v. Duke Power Co., supra.*

## ORDER

1. Defendants are hereby ordered to offer the Plaintiffs, CLARK, REID and WOMACK employment as police officers on the North Chicago Police Force. The Plaintiffs, ROCKINGHAM and PITTS are to be placed on the register of persons for appointment to the NORTH CHICAGO POLICE DEPARTMENT as referred to in Chapter 24 I.R.S. Section 10–2.1–14.

2. The defendant, NORTH CHICAGO POLICE DEPARTMENT and the defendant, NORTH CHICAGO BOARD OF FIRE AND POLICE COMMISSIONERS are hereby ordered to implement the following affirmative action program:

(a) Notice of intent to hire shall be given any and all civic groups and organizations which have previously notified the secretary of the North Chicago Board of Fire and Police Commissioners of a desire to receive such notice;

(b) Notice of said hiring will be carried in at least one newspaper of general circulation in North Chicago, Illinois;

(c) Applications will be made available by the secretary of the North Chicago Board of Fire and Police Commissioners and all applicants will be fingerprinted;

(d) Completed applications will be received by the secretary of the North Chicago Board of Fire and Police Commissioners:

(e) After all applications have been received, the Board shall cause the appropriate inquiries to be made to the

following individuals, agencies and institutions:

(1) Selective Service System

(2) Prior employers

(3) Academic

(4) Secretary of State

(5) Character recommendations

(6) Credit references

(7) Illinois Bureau of Investigation

(8) Federal Bureau of Investigation

(9) Personal background check

(f) The applications and the other information will be initially reviewed. All applicants will be given an opportunity to respond to any adverse information supplied by any of the above mentioned individuals, agencies or institutions. Any applicant rejected will be informed in writing of the reason for his or her rejection;

(g) Written tests will be scheduled for all applicants not previously rejected by the above review. This test will have been scientifically developed as to predictive content and lack of discrimination to minorities. Each applicant will take this test and receive a score. Only applicants who receive the minimum score recommended by the developer of said test shall be considered for the position of police officer;

(h) The Board, at least one member of which shall be Negro, shall interview each applicant, who receives the minimum score on the test referred to in paragraph (g). The interview will be scored from one to a hundred (1–100) by each member of the Board. The interviewers shall use the following criteria in evaluating each applicant:

(1) Appearance

(2) Confidence

(3) Speech

(4) Attitude

(i) Each applicant shall then be given a cumulative score which shall be the sum of 90% of the written test and 10% of the interview score;

(j) Applicants shall be ranked according to this cumulative score and this ranking shall be the list to be published per Chapter 24, Illinois Revised Statutes, Section 10–2.1; and

(k) All applications and resulting information and other papers, documents and correspondence shall be maintained by the Board for a period of five (5) years.